[This opinion has been published in *Ohio Official Reports* at 72 Ohio St.3d 18.]

CLEVELAND BAR ASSOCIATION V. KURTZ.

[Cite as *Cleveland Bar Assn. v. Kurtz*, 1995-Ohio-103.]

*Attorneys at law—Misconduct—Six-month suspension followed by two-year monitored probation on condition that full restitution is made to clients—Charging an excessive fee—Failure to place client's funds in an identifiable bank account—Failure to appropriately account to client—Failure to promptly deliver client's property.*

(No. 94-2651—Submitted January 24, 1995—Decided April 12, 1995.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 94-52.

_____

{¶ 1} Relator, Cleveland Bar Association, on June 20, 1994, charged respondent, John C. Kurtz of Lakewood, Ohio, Attorney Registration No. 0019012, with one count of misconduct involving violations of DR 2-106(A)(charging an excessive fee), 9-102(A) (failure to place client's funds in an identifiable bank account), 9-102(B)(3) (failure to appropriately account to client), and 9-102(B)(4) (failure to promptly deliver client's property). The parties waived a hearing and submitted the matter to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court entirely by stipulation.

{¶ 2} Respondent stipulated to the events underlying the charged misconduct and admitted that his conduct violated DR 2-106(A), 9-102(A), and 9-102(B)(3) and (4).[1] The stipulations state, in part:

"* * * Jose and Girlie Tuballes (hereinafter the Tuballeses) retained respondent on November 24, 1991, to represent them in gaining political asylum

_____

1. Both the complaint and stipulations erroneously refer to DR 9-103(B)(3) and (4).

status from the [I]mmigration and Naturalization Service (hereinafter INS) for Hegino Tuballes (hereinafter Hegino) and Maria Aude Tuballes (hereinafter Maria). * * * On November 24, 1991, the Tuballeses entered into a fee contract with Respondent which provided that the Tuballeses would pay a total of $17,000 to Respondent. * * * Respondent did not advise the Tuballeses that he could not perform the requested legal services until Hegino and Maria were lawfully in the United States. * * * In November and December, 1991, the Tuballeses paid Respondent $9,000.

"* * * On January 15, 1992, Respondent visited the Phillipines, and his wife Enaide (hereinafter Mrs. Kurtz) visited the Phillipines on January 9, 1992. * * * Between January 15, 1992 and February 1, 1992, Respondent met with Hegino once in Manila. * * * Respondent claims to have determined that Hegino did not meet the criteria for asylum as his problem involved a dispute with a neighbor[,] not governmental persecution[.] * * * [Respondent also claims] he informed Hegino that he would attempt to assist him in obtaining a B-1, B-2 [V]isa for him to enter the United States, but that Respondent would need certain documents to do so, including an affidavit of support which Respondent would prepare. * * * Respondent claims that Hegino never provided any of the documents or information needed to complete the affidavit referred to above, so Respondent could not arrange an interview at the Consulate regarding the issuance of [V]isas.

" * * * From the date of the Respondent's return to the United States in February, 1992 until May 6, 1992, Respondent did not report to the Tuballeses concerning the political asylum applications, or other attempts to secure [V]isas for Hegino and Maria. * * * On various occasions, the Tuballeses attempted to contact Respondent at his home and office, but Respondent was unresponsive to the Tuballeses. * * * In July, 1992, Mrs. Tuballes was able to contact Mrs. Kurtz by telephone. * * * In that conversation, Mrs. Kurtz requested three additional weeks to resolve the matter. * * * In that same conversation, Mrs. Kurtz promised Mrs.

Tuballes that Respondent would refund the $9,000 fee if the Visas had not been issued by August 15, 1992. * * * The August 15, 1992 deadline passed without any further contact between Respondent or Mrs. Kurtz and Mr. and Mrs. Tuballes, and Visas were not issued.

"* * * Respondent eventually promised to make a full refund to the Tuballeses, in return for the Tuballeses' agreement not to pursue disciplinary charges or a civil action against Respondent, which the Tuballeses refused.

"* * * Respondent's usual fee for a political asylum case is $5,000 per person. * * * In this instance, Respondent ultimately asked for a fee of $8,500 per person, for a total of $17,000. * * * Respondent's fee agreement with the Tuballeses refers to a fee of $7,500 per person (for a total of $15,000). * * * In addition, Respondent demanded a $2,000 payment in cash from the Tuballeses, declining a check for that additional amount.

"* * * Respondent's services, as set forth above, did not justify the additional fees that Respondent charged the Tuballeses. * * * The $9,000 paid Respondent by the Tuballeses represented a portion of a 'flat rate' Respondent billed the Tuballeses for the political asylum cases. * * * In this case, the object of the representation cannot be accomplished and virtually no services have been performed in the course of the engagement. * * * Respondent withdrew the $9,000 which the Tuballeses paid to Respondent from his IOLTA account or never deposited all or a portion of those funds in his IOLTA account, and is unable to immediately refund this amount to the Tuballeses."

{¶ 3} The panel, in recommending a sanction, found that respondent committed the admitted misconduct, and considered respondent's expression of remorse and promise to repay the Tuballeses. The panel accepted the suggestion submitted by the parties -- that respondent be issued a six-month suspension from the practice of law and also a two-year monitored probation, with the six-month actual suspension to be stayed upon the conditions that he make restitution to the

Tuballeses and successfully complete the monitored probation. The board adopted the panel's findings and its recommendation.

─────────────────

*Michael J. Garvin* and *Michael C. Cohan*, for relator.

*John C. Kurtz, pro se*.

─────────────────

***Per Curiam.***

**{¶ 4}** We have reviewed the stipulations and agree that respondent committed the cited misconduct. However, we consider a stay of the six-month suspension period too lenient for respondent's violations of DR 2-106(A), 9-102(A) and 9-102(B)(3) and (4). We, therefore, order that respondent be suspended from the practice of law in Ohio for a period of six months, with this suspension to be followed by a two-year monitored probation under the condition that he make full restitution with interest at the judgment rate to the Tuballeses by the end of his probation. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

─────────────────